UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **Cynthia Hayes,**  **Plaintiff,**  v.  **United States of America,** *et al.***,**  **Defendants.** | Civil No. 1:16-cv-00131 (APM) |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Plaintiff Cynthia Hayes was brutally beaten by a fellow inmate while detained at the Correctional Treatment Facility ("CTF") in Washington, D.C. Plaintiff now seeks to hold the operator of that facility, Defendant Corrections Corporation of America, liable for her injuries under two theories: (1) negligence and (2) violation of her civil rights under 42 U.S.C. § 1983.[1] Before the court is Defendant's Motion to Dismiss. After evaluating Plaintiff's Complaint under the standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), for the reasons explained below, Defendant's Motion is granted in part and denied in part.

### II.   BACKGROUND

In August 2014, Plaintiff was incarcerated at CTF in Washington, D.C., and placed in the general population. Am. Compl., ECF No. 4, ¶ 13. Also placed in the general population was inmate Kalutte Barnes. *Id.* Barnes suffered from a mental illness that, according to Plaintiff, made her so unstable that she presented a threat of violence and serious bodily injury to other inmates.

---

[1] Plaintiff also has named the United States as a Defendant, but it has filed an Answer.

*Id.* ¶¶ 13-14.  Barnes previously had been hospitalized at St. Elizabeth's Hospital—a psychiatric facility—because of her mental health condition.  *Id.* ¶ 19(e).

On or about August 1, 2014, Barnes viciously attacked Plaintiff and other general population inmates.  *Id.* ¶¶ 15-16.  The beating, among other things, caused Plaintiff to suffer traumatic glaucoma in her left eye and to undergo two weeks of treatment in the infirmary.  *Id.* ¶ 16.  Additionally, Plaintiff has had to undergo prophylactic treatment for HIV prevention and frequent HIV testing.  *Id.*  She continues to receive medical and mental health treatment and has incurred medical expenses because of the attack.  *Id.*

### III.   LEGAL STANDARD

Defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The factual allegations in the complaint need not be "detailed"; however, the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555). If the facts as alleged fail to establish that a plaintiff has stated a claim upon which relief can be granted, a court must grant defendant's Rule 12(b)(6) motion.  *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept a plaintiff's "factual allegations . . . as true," *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015), and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). The court need not accept as true, however, "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "inferences . . . unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## IV.    DISCUSSION

### A.    Negligence Claim

Defendant asserts that Plaintiff's negligence claim must be dismissed because Plaintiff has failed to allege facts that would give rise to the plausible inference that Defendant was aware, before the attack, that Barnes was mentally unstable and prone to violence. Def.'s Mot., ECF No. 6, at 4. Defendant's argument, however, is premised on an incorrect reading of the law. Citing *Board of Trustees of the University of District of Columbia v. DiSalvo*, 974 A.2d 868, 870-71 (D.C. 2009), Defendant asserts that a heightened showing of foreseeability is required when, as here, an injury results from an intervening criminal act. *See* Def.'s Mot. at 4. However, as explained in *Wilkins v. District of Columbia*, 879 F. Supp. 2d 35, 40 (D.D.C. 2012), District of Columbia law "does not employ the heightened foreseeability standard when analyzing the government's duty to protect inmates from assault. Instead, [it] applies 'an ordinary negligence standard,' under which an assaulted prisoner must establish an applicable standard of care, deviation from that standard, and injury proximately caused by the deviation." *Id.* (quoting *Hughes v. District of Columbia*, 425 A.2d 1299, 1302 (D.C. 1981)).

Plaintiff's Complaint alleges sufficient facts to support each of those three elements. First, Plaintiff alleges that Defendant owed her a duty of care to protect her from "potentially mentally unstable and violent inmates." Am. Compl. ¶ 22. Such a duty is recognized under District of Columbia law. *See Wilkins*, 879 F. Supp. 2d at 41 (observing that District of Columbia law imposes a duty to exercise reasonable care in the protection and safekeeping of prisoners). Second, Plaintiff alleges that Defendant deviated from that standard of care by classifying and placing Barnes in the general population, even though it knew or, importantly, should have known, that she was mentally unstable and prone to violence. Plaintiff also alleges that Defendant deviated from the standard of care by failing to remove her from the general population. Am. Compl. ¶ 24(b). Although Defendant contends that Barnes' mental health assessment and placement in the general population were the responsibility of the facility's medical care contractor, Unity Healthcare, *see* Def.'s Reply, ECF No. 14, at 2-3, at the motion to dismiss stage, the court must treat as true Plaintiff's allegation that such responsibility fell on Defendant.

Finally, reading the Complaint favorably to Plaintiff, it is plausible to infer that Defendant's failure to fully grasp Barnes' dangerousness and its placement of her in the general population were the proximate cause of Plaintiff's injuries. To be sure, even under an ordinary negligence standard, foreseeability of the injury must be considered. *See Wilkins*, 879 F. Supp. 2d at 42. However, so long as "the danger of an intervening negligent or criminal act should have been reasonably anticipated and protected against," a defendant shall be held responsible for a breach of the duty of care. *Id.* (internal quotation marks and citation omitted). Here, Plaintiff has alleged that Defendant, at a minimum, "should have known" that Barnes was mentally unstable and prone to violence. Am. Compl. ¶ 14. It is plausible to infer from the Complaint that Defendant, which ran and operated CTF, would have had access to information about the reason for Barnes' present

incarceration; her past criminal history; and her mental health history. It is reasonable to infer that, with the benefit of discovery, Plaintiff may be able to show that Defendant did not sufficiently appreciate the danger that Barnes posed to fellow inmates and that such negligence was the proximate cause of Plaintiff's injuries. Plaintiff thus has sufficiently alleged her negligence claim to survive Defendant's Motion to Dismiss.

B.   **Section 1983 Claim**

Defendant advances two arguments to challenge Plaintiff's Section 1983 claim. First, it contends that Plaintiff has failed to allege that Defendant was deliberately indifferent to her constitutional rights. Second, Defendant claims that Plaintiff has failed to allege that a custom or policy caused the constitutional violation. Def.'s Mot. at 5-6. Because the court agrees with the second of these arguments, it need not consider the first.

Section 1983 does not support a claim based on a theory of *respondeat superior* liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-93 (1978). Instead, when seeking to hold a private company acting under color of state law[2] responsible for its employees' actions under Section 1983—known as *Monell* liability—a plaintiff must allege that the employees acted pursuant to a custom or policy of the company, which caused the alleged constitutional violation. *See Jordan v. District of Columbia*, 949 F. Supp. 2d 83, 90 (D.D.C. 2013) ("Many courts have adopted the 'custom or policy' requirement—which was designed for claims against a municipality—when adjudicating § 1983 claims against private entities."); *Smith v. Corrs. Corp. of America*, 674 F. Supp. 2d 201, 205 (D.D.C. 2009) ("Where a plaintiff seeks to hold a private

---

[2] Defendant does not dispute that, as a contractor for the District of Columbia, it was acting under "color of state law." Compl ¶ 33. *See Jordan v. District of Columbia,* 949 F. Supp. 2d 83, 89-90 (D.D.C. 2013) ("To recover damages under § 1983, a plaintiff must generally show that the alleged deprivation was committed by a person acting under color of state law.").

5

corporation responsible for the actions of its employees . . . the plaintiff must also demonstrate that the employee acted pursuant to a custom or policy of the corporation.").

There are multiple ways in which a plaintiff can establish *Monell* liability.  A plaintiff can demonstrate that:  (1) the company "explicitly adopted the policy that was 'the moving force of the constitutional violation,'" *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (quoting *Monell*, 436 U.S. at 694); (2) a company policymaker "knowingly ignore[d] a practice that was consistent enough to constitute custom," *id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-30 (1988)); or (3) the company neglected to respond "to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations," *id.* (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (internal quotation marks omitted)).

Here, Plaintiff asserts a "deliberate indifference" theory of corporate liability.  *See* Pl.'s Opp'n, ECF No. 11, at 14-15.  Plaintiff alleges that, since it began managing CTF, Defendant "through [its] policies, practices, acts, and omissions ha[s] exhibited and continue[s] to exhibit a policy, custom and practice of deliberate indifference to the health, safety and welfare of the inmates in [its] care, including failing to protect inmates from violent attacks from other inmates, culminating in the attack on Plaintiff Hayes."  Am. Compl. ¶ 29.  She continues:  "The factual predicate for this assertion are the numerous lawsuits and complaints that have been lodged and filed against [Defendant], both involving the CTF and other correctional facilities run by [Defendant] throughout the United States."  *Id.* ¶ 30.  As a result of these lawsuits, which contain "similar allegations of constitutional violations and reckless indifference of [Defendant] to the health, safety and welfare of inmates," *id.* ¶ 31, Plaintiff contends, Defendant "knew of the continuing deliberate indifference of [its] staff," *id.* ¶ 32.

The court agrees with Defendant that such allegations are insufficient, as a matter of law, to establish the requisite custom or policy for Section 1983 liability to attach to a private corporation.  *See* Def.'s Mot. at 7-8 (citing cases).  Plaintiff's Complaint does not identify the specific customs or policies at issue in the alleged lawsuits; nor does she identify them by their titles or courts; nor has she alleged that any of these "numerous lawsuits and complaints," Am. Compl. ¶ 30, succeeded in establishing that Defendant's customs or policies resulted in a constitutional violation comparable to the one alleged here.  Alleging no more than the mere existence of generic, unidentified lawsuits and complaints, as Plaintiff has done here, is not enough to establish the custom or policy required to allege liability under Section 1983.

In her opposition brief, Plaintiff takes a different, narrower tack.  She argues that she has established reckless indifference based on the allegations that Defendant "knew or should have known that inmate Barnes was violent, dangerous and a threat to other inmates but indifferently allowed her in general population."  Pl.'s Opp'n at 15-16.  That argument fares no better.  First, the argument fails because it is not the theory of *Monell* liability that she advances in her Complaint.  *See* Am. Compl. ¶ 30 (stating that that "factual predicate" for her policy or custom claim "are the numerous lawsuits and complaints that have been lodged and filed against [Defendant]").  "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Arbitraje Casa de Cambio, S.A. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

Second, even if the court were to consider Plaintiff's new theory of reckless indifference, she cannot premise *Monell* liability on the single episode of indifference to safety that she asserts here.  "The law is clear that '[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*' and 'considerably more proof than [a] single incident will be

7

necessary in every case to establish both the requisite fault on the part of the [company], and the causal connection between the 'policy' and the constitutional deprivation." *Poindexter v. D.C. Dep't of Corrs.*, 891 F. Supp. 2d 117, 122 (D.D.C. 2012) (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985)); *see also Canton v. Harris*, 489 U.S. 378, 399-400 (1989) (rejecting *Monell* liability based upon a single incident); *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 398 (1997) (stating that the Court left open in *Canton* a "narrow range of circumstances" for single-incident liability where a "violation may be a highly predictable consequence of the failure to train"); *Connick v. Thompson*, 563 U.S. 51, 63 (2011) (describing the *Canton* single-incident exception as a situation in which the failure "to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations"). Here, Plaintiff has not alleged any constitutional deprivation other than her own. That is not enough to plead the requisite connection between a policy or custom and the constitutional harm alleged.

Plaintiff attempts to analogize her case to *Smith v. Corrections Corporation of America*, 674 F. Supp. 2d at 206-07, in which the court held that the plaintiff had sufficiently pled deliberate indifference against the very same defendant sued here. Pl.'s Opp'n at 14-15. *Smith*, however, presented a different case. There, the plaintiff not only pled facts that would have placed the defendant on notice of the plaintiff's constitutional injury—the failure to provide adequate medical care—but also alleged a connection between her injury and a "systemic problem[]" with the provision of such care. *Smith*, 674 F. Supp. 2d at 207. By contrast, Plaintiff in this case has not pled any *facts* that would causally connect her injury to any "systemic" failure by Defendant to address known problems with designation of dangerous inmates. Plaintiff's bare assertions about unidentified lawsuits are not enough. Her pleading, therefore, fails to allege the crucial element of causation required to establish *Monell* liability.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted as to Plaintiff's Section 1983 claim, but denied as to her negligence claim.

Dated: June 13, 2016

Amit P. Mehta
United States District Judge